**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

JAMIA MCCULLER,

Plaintiff,

-against-

THE CITY OF ROCHESTER, MICHAEL COLLINS, AMBER GROSCH, JUSTIN WHITMORE, HENRY FAVOR, RAYMOND DEARCOP, RALPH MONTINARELLI, JOSEPH MORABITO, SAMUEL LUCYSHYN, "JOHN DOE POLICE OFFICERS 1-200" (names and number of whom are unknown at present),

Defendants.

CASE NO. 21-cv-6763 (FPG)(MWP)

**AMENDED COMPLAINT**
**[JURY TRIAL DEMANDED]**

Plaintiff, by her attorneys, ROTH & ROTH, LLP and EASTON THOMPSON KASPAREK SHIFFRIN LLP, complaining of the defendants, respectfully allege as follows:

## I.   PARTIES

1.      Plaintiff JAMIA MCCULLER (she/her) is a resident of the City of Rochester, State of New York.

2.      Defendant CITY OF ROCHESTER ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the RPD.

3.      Defendant CITY OF ROCHESTER ("CITY") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York. Defendant CITY maintains the City of Rochester Police Department, a duly authorized police department, authorized to perform all functions of a police department. RPD acts as Defendant CITY's agent

and Defendant CITY assumes the risks incidental to the maintenance of a police department and the employment of police officers.

4.    MICHAEL COLLINS, AMBER GROSCH, JUSTIN WHITMORE and "JOHN DOE" ROCHESTER POLICE DEPARTMENT OFFICERS 1–200 (the names and numbers of which are currently unknown), were, at all times relevant to this Complaint, Police Officers with the RPD. At all relevant times, these defendants were acting within the scope of their employment with the CITY and RPD and under color of state law. They are sued in their individual capacities. John Doe RPD Officers are referred to collectively as "the RPD officers."

5.    Defendant HENRY C. FAVOR ("FAVOR") was, at all times relevant herein, Commander of the Special Operations Division ("SOD") of the RPD. In that role, he oversaw the Mobile Field Force ("MFF"). In his capacity as Commander of the SOD, he was responsible for all MFF matters, including the appointment, training, supervision and conduct of all MFF personnel. In addition, Defendant FAVOR was responsible for enforcing the rules of the MFF and ensuring that MFF personnel obey the laws of the United States and the State of New York. He is sued in his individual capacity.

6.    Defendant RAYMOND W. DEARCOP ("DEARCOP") is the Commander of the Special Operations Section ("SOS") of the RPD. At all relevant times herein, he was a Captain with the RPD assigned to the SOD. On September 4, 2020, DEARCOP was one of the Incident Commanders on on the scene. On September 5, 2020, DEARCOP was the Deputy Incident Commander on the scene. As commander of the SOS, he oversaw the MFF and all its personnel and was responsible for all MFF matters, including the appointment, training, supervision and conduct of all MFF personnel. In addition, Defendant DEARCOP was responsible for enforcing

the rules of the MFF and ensuring that MFF personnel obey the laws of the United States and the State of New York. He is sued in his individual capacity.

7.     Defendant RALPH MONTINARELLI ("MONTINARELLI"), at all relevant times herein, was a Lieutenant assigned to the SOC and the Tactical Unit ("TACT") of the RPD. Montinarelli was one of the Incident Commanders on September 4, 2020. Montinarelli was the Field Force Commander on September 5, 2020, where he oversaw all Mobile Field Force members on the ground. Defendant RALPH MONTINARELLI is or was at all relevant times a supervisory employee of RPD and acting within the scope of his employment and under color of law. Defendant Montinarelli is sued in his individual capacity.

8.     Defendant JOSEPH MORABITO is or was at all relevant times a supervisory employee of RPD and acting within the scope of his employment and under color of law. Defendant Morabito is sued in his individual capacity. Morabito was the Incident Commander on September 5, 2020.

9.     Defendant SAMUEL LUCYSHYN is or was at all relevant times a Lieutenant with the RPD and acting within the scope of his employment and under color of law. At all relevant times herein, LUCYSHYN was the Grenadier Team Leader. The Grenadier Team is a component of the MFF, comprised of selected members who are trained to deploy chemical munitions, and to utilize other crowd dispersal technology and techniques. As Grenadier Team Leader, Defendant LUCYSHYN oversaw the Grenadier Team and was responsible for all Grenadier Team matters, including the selection, ordering, purchase, and inventory of all chemical weapons and/or "less lethal" weapons used by the Grenadier Team; and the appointment, training, supervision and conduct of Grenadier Team personnel. In addition, Defendant LUCYSHYN was responsible for enforcing the rules of the Grenadier Team and

ensuring that Grenadier Team personnel obey the laws of the United States and the State of New York. He is sued in his individual capacity.

### III. JURISDICTION

10.     This action falls within one or more of the exceptions as set forth in CPLR Section 1602, involving intentional actions, as well as the defendant, and/or defendants, having acted in reckless disregard for the safety of others, as well as having performed intentional acts.

11.     Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

12.     Plaintiff filed a timely Notice of Claim against the City, in compliance with the Municipal Law § 50.

13.     The City waived its 50-h hearing.

14.     More than thirty (30) days have elapsed since service of said Notice of Claim was filed and the City has failed to pay or adjust the claim.

15.     This action is being brought within a year and 90 days of the event that gives rise to Plaintiff's causes of action under New York State law and Plaintiff has complied with all of the statutory prerequisites for bringing this action.

### IV. STATEMENT OF FACTS

**A. Facts Common to All Causes of Action.**

16.     On March 23, 2020, Daniel Prude's family sought help from the Rochester Police Department ("RPD") as Daniel was suffering an acute mental health crisis. Tragically, that call for help ended with Daniel naked and handcuffed with his face covered by a "spit hood," as an RPD officer pushed his head into the freezing asphalt for several minutes. RPD officers on the

scene mocked Daniel and chatted with each other while he asphyxiated. Daniel was declared brain dead that night; he was taken off life support and died on March 30.

17.     When the video of RPD Officers killing Daniel Prude was finally made public on September 2, 2020, it sparked nationwide outrage. In Rochester, thousands of people gathered to mourn the loss of Black lives, demand the CITY finally end its racist and brutal policing practices, and call for new visions of public safety that value Black lives.

18.     On September 2-6, 2020, the defendants responded to peaceful protests with extreme violence—including the indiscriminate use of tear gas and pepper spray, 40 millimeter blunt-impact projectiles, thousands of pepper balls, flash-bang grenades and other supposedly "less-than-lethal" munitions.

19.     On the evening of September 3, 2020, a group of peaceful protesters, many of them Black and brown, assembled in front of the PSB to call for justice for Mr. Prude and an end to the RPD's brutal and racist policing.

20.     According to the New York Times: "People were sitting, singing, chanting, and eating pizza. At around 10:30 p.m., the dozen or so police officers who had been monitoring the demonstrators from behind a barricade were joined by around 20 reinforcements in riot gear. The officers suddenly surged toward the barricade and began firing an irritant into the crowd. It was unclear what led them to do so."

21.     On September 3, 2020, at approximately 10:30 p.m. to 11:15 p.m., in the vicinity of the sidewalk in front of the PSB, Plaintiff was shot multiple times with pepper balls, without cause or justification.

22.     Thereafter, on September 4, 2020 at approximately 12:15 a.m. to 12:20 a.m., Ms. MCCULLER video recorded GROSCH aggressively harassing another protester.

23.     In retaliation, at approximately 12:27 a.m., COLLINS ordered that Ms. MCCULLER be arrested.

24.     COLLINS, GROSCH, WHITMORE and other RPD officers then immediately rushed at Ms. MCCULLER, violently seized her and threw her to the ground.

25.     COLLINS seized Ms. MCCULLER and violently pulled her hair and threw her on the ground, without cause or justification.

26.     COLLINS then placed his full bodyweight on Ms. MCCULLER'S back and neck, without cause or justification.

27.     GROSCH also placed her full bodyweight on Ms. MCCULLER'S back and neck, without cause or justification.

28.     GROSCH violently pulled Ms. MCCULLER'S hair, without cause or justification.

29.     GROSCH put her hand around Ms. MCCULLER'S neck, choking her, without cause or justification.

30.     GROSCH repeatedly struck Ms. MCCULLER'S and used "pain compliance" techniques against her without cause or justification.

31.     COLLINS, GROSCH, WHITMORE and other RPD officers placed handcuffs on Ms. MCCULLER'S wrists, without cause or justification.

32.     At no time did Ms. MCCULLER commit any crime or violation or threaten police officer.

33.     At no time did Ms. MCCULLER block vehicular or pedestrian traffic, as the street had been closed to

34.     At no time did Ms. MCCULLER encourage others to commit any crime or violation or threaten police officers.

35.     Nevertheless, PSB, COLLINS, GROSCH, WHITMORE and other RPD officers fabricated official RPD paperwork and falsely accused Ms. MCCULLER of Disorderly Conduct, Harassment and Resisting Arrest. The false paperwork was forwarded to the District Attorney's Office, thereby initiating Ms. MCCULLER's malicious prosecution.

36.     Ms. MCCULLER was detained in police custody for several hours before she was released.

37.     Ms. MCCULLER was forced to appear in criminal court on several occasions before all the false criminal charges were eventually dismissed in their entirety on or about June 16, 2021.

38.     The Incident Commanders, who made all tactical decisions regarding the response to the protesters on September 3-4, 2020 were, upon information and belief, Defendants MORABITO, MONTINARELLI and DEARCOP.

39.     Additionally, LUCYSHYN was on the ground on September 3, 2020, directing the police response and carrying out orders provided by the Incident Commanders over the radio.

40.     Upon information and belief, MORABITO, MONTINARELLI, DEARCOP and LUCYSHN, along with other policymakers for the City and RPD, developed the protest response plan for the night of September 3-4, 2020.

41.     Upon information and belief, MORABITO, MONTINARELLI and DEARCOP ordered officers deploy pepper balls and to rush at protesters, and to use other aggressive tactics to force Plaitniff and other protesters into the parking lot across from the PSB. Upon information

and belief, LUCYSHYN conveyed these orders to officers on the ground, including COLLINS, GROSCH and WHITMORE, who, as a result, used force against Plaintiff and arrested her.

42.     After the protest on the night of September 3-4, 2020, and After Action Report was caused to be drafted by the Incident commanders. Upon information and belief, the After Action Report was reviewed, approved and ratified by the Incident Commanders and other policymakers for the City, including the Police Chief.

B. **Negligence of the City And RPD in Failing to Properly Train RPD Officers On The Proper Handling of First Amendment Assemblies, and In Failing to Supervise and Discipline Officers Who Used Excessive Force Against Protesters**.

43.     The violation of Ms. MCCULLER's rights is attributable to the CITY and RPD's disregard of many years of notice, criticism, and other relevant data points, both internal and external, related to its unconstitutional policing of similar protests.

44.     Since at least the 2009, the RPD has failed to appropriately train its officers on the proper handling of First Amendment assemblies, including peaceful protests and lawful demonstrations.

45.     Upon information and belief, the core training provided by the CITY related to protest response is based on crowd management and disorder control tactics for policing large-scale civil disorders and riots.

46.     According to the CITY's website, the RPD's Mobile Field Force (MFF) is a "specially trained and equipped team providing a rapid, organized and disciplined response to civil disorder [and] crowd control."

47.     The MFF was the RPD's primary unit tasked with policing the peaceful protests in the wake of George Floyd and Daniel Prude in May and September 2020.

48.     Upon information and belief, the MFF's training and guidelines treat peaceful protests and peaceful demonstrations  as military engagements and copies military tactics and focus on tactics designed to deter, disperse, and demoralize groups, such as disorder control formations and mass use of chemical weapons.

49.     Such disperse and demoralize tactics have persisted through the present as exemplified by the experiences of Ms. MCCULLER.

50.     Upon information and belief, the MFF's "civil disorder" training and guidelines were never meant to be guidelines for the policing of lawful First Amendment assemblies such as demonstrations—only for large-scale civil disorders such as riots.

51.     However, neither the MFF's "civil disorder" training and guidelines, nor, upon information and belief, any related RPD training, contain meaningful direction on the core First, Fourth, or Fourteenth Amendment principles that must guide constitutional policing of First Amendment assemblies.

52.     For example, upon information and belief, there is virtually no RPD training— and certainly no meaningful RPD training—focusing on how to utilize the tactics described in the MFF's "civil disorder" training and guidelines without infringing on the constitutional rights of protesters, such as how to make probable cause determinations or the requirements of providing an alternative avenue of protest, meaningful time and a path of egress when issuing a dispersal order, and the like.

53.     Many MFF members have histories of engaging in the kinds of misconduct complained of herein, among other places, by CRB complaints, PSS investigations and in lawsuits.

54.     Examples of the RPD's unreasonable and discriminatory use of force at prior lawful protests include:

- In October 2009, an anti-war protest in Rochester resulted in several physical confrontations, with two protesters receiving stitches at the hospital after RPD officers pushed them face-first to the ground, and 12 protesters arrested for exercising their First Amendment rights. The peaceful march, held in the early evening, was interrupted by approximately forty RPD vehicles. Within three minutes of giving the order to disperse, RPD officers began to shove and hit protesters with clubs and deploy pepper spray. Protesters described RPD officers wading through the crowd to pick out Black students to arrest. A press videographer who was filming one such arrest was wrestled to the ground by police and himself arrested.

- In May 2015, Katrina Perkins was protesting police brutality on a public street in a residential neighborhood, where two of her daughters and six of her grandchildren reside. Though Ms. Perkins was peacefully demonstrating, RPD officers violently seized and arrested her and then charged her with disorderly conduct and disruption. Those charges were dismissed two months later. Police brutality is a deeply personal issue to Ms. Perkins, as her daughter Lashedica was the 13-year-old shot three times by former-Deputy Chief Simmons in 2005.

- In July 2016, in Rochester as across the nation, people took to the streets to uphold the sanctity of Black lives and call for an end to racist policing. In response, the RPD deployed, beat, shoved, and pepper sprayed protesters. As one described it: "I started to turn and they tackled me to the ground.…They're beating citizens for no reason whatsoever. I wasn't doing anything. I was taking pictures." RPD officers, in keeping

with their pattern and practice, particularly targeted Black protesters with unlawful force, including Black journalists: Carlet Cleare and Justin Carter of WHAM-TV were both handcuffed and detained, even though Ms. Cleare was wearing a WHAM-TV shirt and they identified themselves as members of the press. Over the course of one weekend, Rochester had more arrests at its BLM protest (74) than the rest of the nation combined.

55.     Despite the wealth of evidence of RPD members' historical brutality against protesters, Defendant City has ignored, and/or failed to utilize, relevant information, including information gleaned from reports and lawsuits, as well as other data points, to identify deficiencies in RPD training as it relates to constitutionally compliant protest policing.

56.     In fact, following the 2016 protest, the RPD and Mayor Lovely Warren's office stated the police handled themselves appropriately.

57.     When questioned by public officials after the September 2020 protests, former RPD Chief La'Ron Singletary stated that he did not review the RPD's actions at the 2016 protest in developing the RPD's strategy for responding to protests in 2020.

58.     In summary, upon information and belief, the RPD's exclusive focus on deterring, dispersing, and demoralizing in trainings related to policing protests, coupled with the failure to train on specific, relevant aspects of constitutional policing of protests, let alone how to encourage or facilitate protests—despite having received clear notice that RPD policing of protests has caused the systemic violations of protesters' constitutional rights for years—demonstrates the City's negligence in failing to train and supervise RPD Officers in properly and lawfully policing protests to ensure that protesters' rights under the First Amendment, Fourth

Amendment, Fourteenth Amendment, and other, related rights are not violated. As a result of the

City's negligence, Plaintiff was injured and harmed, as described herein.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### Municipal Liability

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's First, Fourth and Fourteenth Amendment Rights***

59.     All preceding and subsequent paragraphs are incorporated by reference.

60.     All of the wrongful acts or omissions complained of herein against Plaintiff and

other protesters were carried out by the individually named and unnamed RPD officers pursuant

to: (a) formal policies, rules, and procedures of Defendant CITY; (b) actions and decisions by

Defendant CITY's policymaking agents; (c) customs, practices, and usage of the RPD that are so

widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned,

ratified, sanctioned, and/or enforced by CITY policymaking officials; (d) Defendant CITY's

deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth

Amendments of the United States Constitution, as evidenced by the CITY's failures, and the

failures of the other policymaking agents, to train, supervise, and discipline RPD officers, despite

full knowledge of the their wrongful acts against Plaintiff and other protesters, as described

herein.

61.     As a result, Plaintiff sustained damages in an amount in excess of the

jurisdictional limits of all the lower Courts of the State of New York.

### SECOND CLAIM FOR RELIEF
### Excessive Force
### *Pursuant to 42 U.S.C. § 1983*

62.     All preceding and subsequent paragraphs are incorporated by reference.

63.     Defendants' actions towards Plaintiff constitutes excessive force in violation of 4th and 14th Amendments of the United States Constitution and 42 U.S.C. § 1983.

64.     Defendants used force against Ms. MCCULLER that was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted them.

65.     It was objectively unreasonable for the RPD Officers to shoot Plaintiff with pepper balls when she was not threatening police officers in any way, but instead was peacefully protesting in front of the PSB.

66.     It was objectively unreasonable for the RPD officers to chase Ms. MCCULLER, violently seize her, throw her to the ground, place their full bodyweight on her back, pull her hair, strike her multiple times and use various "pain compliance" techniques against her.

67.     The force used against Ms. MCCULLER constitutes a seizure under the 4th Amendment.

68.     The types and levels of force Defendants used against Plaintiff were in contravention of, or inconsistent with, related policies and/or training.

69.     As a result of the acts and omissions of the RPD officers, Defendants deprived Plaintiff of federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

70.     The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

71.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### THIRD CLAIM FOR RELIEF
**Assault and Battery**
*Pursuant to New York State Law*

72.     All preceding and subsequent paragraphs are incorporated by reference.

73.     RPD officers battered Ms. MCCULLER by subjecting her to various chemical weapons.

74.     RPD officers shot Ms. MCCULLER with pepper balls while she was peacefully protesting in front of the PSB.

75.     On September 4, 2020 COLLINS, GROSCH, WHITMORE and other RPD Officers assaulted and battered Ms. MCCULLER by chasing her, violently seizing her, throwing her to the ground, placing their full bodyweight on her back, pulling her hair, striking her and using various "pain compliance" techniques against her.

76.     Ms. MCCULLER was not threatening the law enforcement officers or any other person at any time.

77.     Ms. MCCULLER was not committing any crime or violation.

78.     By the aforedescribed conduct, Defendants, their agents, servants and employees, acting within the scope of their employment, intentionally, willfully and maliciously battered Plaintiff Ms. MCCULLER, when they, in a hostile and/or offensive manner struck Plaintiff without her consent and with the intention of causing harmful and/or offensive bodily contact to the Plaintiff and caused such battery.

79.     The RPD Officers were at all times agents, servants, and employees acting within the scope of their employment by the Defendant CITY and the RPD, which are therefore responsible for their conduct.

80.     The Defendant CITY, as the employer of the individual RPD Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

81.     At no point during the incidents described herein did the circumstances necessitate or support the above applications of force utilized by the Defendant RPD officers against Plaintiff.

82.     The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

83.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

**FOURTH CLAIM FOR RELIEF**
**Unlawful Seizure / False Arrest**
***Pursuant to 42 U.S.C. § 1983***

84.     All preceding and subsequent paragraphs are incorporated by reference.

85.     COLLINS, GROSCH, WHITMORE and other RPD officers had no judicial warrant authorizing them to seize Ms. MCCULLER.

86.     COLLINS, GROSCH, WHITMORE and other RPD officers seized Ms. MCCULLER, restricting her freedom of movement, without privilege or lawful justification.

87.     Ms. MCCULLER was conscious of her confinements by Defendants.

88.     Ms. MCCULLER did not consent to being confined by Defendants.

89.     No reasonable officer would have believed they had reasonable or probable cause to seize, detain, or arrest Ms. MCCULLER.

90.     COLLINS, GROSCH, WHITMORE and other RPD officers did not have individualized probable cause to seize, detain, or arrest Ms. MCCULLER.

91.     The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

92.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

**FIFTH CLAIM FOR RELIEF**
**Unlawful Seizure / False Arrest**
***Pursuant to New York State Law***

93.     All preceding and subsequent paragraphs are incorporated by reference.

94.     One or more of the defendant RPD officers, including but not limited to COLLINS, GROSCH, WHITMORE handcuffed and arrested Plaintiff.

95.     The arrest was made in the absence of a warrant for the arrest.

96.     The arrest was made in the absence of probable cause for the arrest.

97.     The Defendant RPD officers arrested Plaintiff without having exigent circumstances for doing so.

98.     There was no other authority for the arrest of Plaintiff.

99.     Plaintiff was conscious of the arrest.

100.    Plaintiff did not consent to the arrest.

101.    The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

102.    The defendant RPD officers were at all times agents, servants, and employees acting within the scope of their employment by the Defendant City and the RPD, which are therefore responsible for their conduct.

103.    The Defendant City, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

104.    As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### SIXTH CLAIM FOR RELIEF
**Evidence Fabrication / Denial Of Fair Trial**
***Pursuant to 42 U.S.C. § 1983***

105.    All preceding and subsequent paragraphs are incorporated by reference.

106.    Defendants deliberately fabricated information in  police reports and other arrest paperwork that they knew was likely to influence a jury's verdict, forwarded that fabricated evidence to prosecutors, and Plaintiff suffered a deprivation of life, liberty or property as a result.

107.    Defendants' actions violated Plaintiff's rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, to due process of law and to a fair trial, and as such, they are liable to plaintiff under 42 U.S.C. § 1983, for compensatory and punitive damages.

108.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer economic injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, economic damages, legal expenses and damages to their reputation and standing within the community.

109.     COLLINS, GROSCH, WHITMORE and other RPD officers' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

110.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

**SEVENTH CLAIM FOR RELIEF**
**Malicious Prosecution**
***Pursuant to 42 U.S.C. § 1983***

111.     All preceding and subsequent paragraphs are incorporated by reference.

112.     The RPD Officers, acting individually and in concert, initiated the prosecution of Plaintiff, despite knowing that probable cause did not exist to arrest and prosecute her for any crime.

113.     False and fabricated evidence was given by the RPD officers to the District Attorney's Office.

114.     The RPD officers knew or were deliberately and recklessly indifferent to the truth that probable cause did not exist to arrest and prosecute Plaintiff.

115.     There was actual malice and an absence of probable cause for the criminal proceeding against Plaintiff and for each of the charges for which she was prosecuted.

116.     On June 16, 2021, the prosecution terminated in Plaintiff's favor.

117.     As a direct and proximate result of the RPD officers' actions, Plaintiff was wrongly prosecuted for approximately seven months and suffered the other grievous and continuing injuries and damages as set forth above.

118.     COLLINS, GROSCH, WHITMORE and other RPD officers' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

119.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### EIGHTH CLAIM FOR RELIEF
**Malicious Prosecution**
***Pursuant to New York State Law***

120.     All preceding and subsequent paragraphs are incorporated by reference.

121.     By the actions described above, the CITY and RPD officers  jointly and severally, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

122.     By the actions described above, CITY and the RPD officers each violated good and accepted police practices.

123.     On February 11, 2021, the prosecution terminated in Plaintiff's favor.

124.     There was no probable cause for the commencement or the continuation of the criminal proceedings.

125.     The RPD officers acted with actual malice.

126.     The CITY and RPD employed the RPD officers, who were at all times agents, servants, and employees acting within the scope of their employment with the CITY and the RPD, which are therefore responsible for their conduct.

127.     The CITY, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

128.    As a result of Defendants' impermissible conduct, Plaintiff was injured and harmed.

129.    COLLINS, GROSCH, WHITMORE and other RPD officers' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

130.    As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### NINTH CLAIM FOR RELIEF
**First Amendment Infringements, Including First Amendment Retaliation**
***Pursuant to 42 U.S.C. § 1983***

131.    All preceding and subsequent paragraphs are incorporated by reference.

132.    In committing the acts and omissions complained of herein, Defendants acted under color of state law—individually, in concert, and through a conspiracy—to deprive Plaintiff of the rights protected by the First Amendment to the United States Constitution.

133.    Defendants (a) retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, and (b) imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to subjecting Plaintiff to excessive force, in arresting and prosecuting plaintiff, in selectively enforcing laws and regulations against Plaintiff, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

134.    Defendants engaged in those and other acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

135.    Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

136.    Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

137.    The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

138.    As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

<u>**TENTH CLAIM FOR RELIEF**</u>
**Failure To Intervene**
*Pursuant to 42 U.S.C. § 1983*

139.    All preceding and subsequent paragraphs are incorporated by reference.

140.    The individual defendants all had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by the other Defendant RPD officers.

141.    The individual defendants failed to intervene on Plaintiff's behalf despite having had realistic opportunities to do so.

142.    The individual defendants failed to intervene on Plaintiff's behalf despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

143.    As a result of the aforementioned conduct of the individual defendants, Plaintiff's constitutional rights were violated.

144.    The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

145.    As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

**ELEVENTH CLAIM FOR RELIEF**
*Supervisory Liability Under 42 U.S.C. § 1983*
**(Against FAVOR, DEARCOP, MONTINARELLI, MORABITO and LUCYSHYN)**

146.    All preceding and subsequent paragraphs are incorporated by reference.

147.    As Commander of the SOD of the RPD, FAVOR oversaw the MFF, and was responsible for all MFF matters, including the appointment, training, supervision and conduct of all MFF personnel.

148.    FAVOR personally caused Plaintiff's constitutional injuries by failing to properly train MFF personnel, as described herein; and by failing to appropriately supervise and discipline MFF personnel who violated departmental policy (such as by shooting pepper balls at head level), who engaged in unlawful conduct and/or who violated the rights of Plaintiffs and other protesters.

149.    Morabito, Montinarelli and Dearcop were the Incident Commanders on September 3-4, 2020. In that role, they oversaw the RPD and the joint protest response on that night, and ordered the use of specific tactics and weapons, which caused Plaintiffs' injuries and damages, as described herein.

150.    Lucyshyn was the Grenadier Team Leader at all times relevant herein. In that role, he chose the various chemical weapons and other "less-lethal" weapons that were used against Plaintiffs and other protesters in September and October, 2020. He also oversaw the training, supervision and discipline of all Grenadier Team members. As such, he was personally involved in causing the injuries sustained by Plaintiffs, as described herein.

151.    Because of the foregoing, Plaintiff sustained, *inter alia*, physical pain, permanent physical injuries, mental injuries, emotional distress, embarrassment, humiliation, loss of standing

in the community, adverse employment consequences, loss of liberty, and deprivation of his common law and constitutional rights, and seeks compensation in an amount to be determined at trial.

152.   As a result of the foregoing, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

153.   Defendants committed the foregoing violations of Plaintiffs' rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to Plaintiffs' constitutional rights or to the effect of such misconduct upon Plaintiffs' constitutional rights.

154.   By reason of the foregoing, the Defendants are liable to Plaintiffs, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.


**WHEREFORE** and in light of the foregoing, Plaintiff demands judgment on all claims for relief:

a.   Empanel a jury;

b.   Award compensatory and punitive damages;

c.   The Plaintiff demands the foregoing relief jointly and severally against all of the defendants in an amount in excess of the jurisdiction of all lower Courts, except that the punitive damages demands are, as a matter of law, not recoverable against a municipality and therefore are not made against the City;

d.   Award Plaintiff reasonable attorney's fees and costs, and interest pursuant to 42 U.S.C. § 1988; and

e.   Such other and further relief as the court may deem just and proper.

Dated: New York, New York
      September 4, 2023

Respectfully Submitted,

ROTH & ROTH, LLP.

~//s//~

_____

Elliot Dolby Shields
Co-counsel for Plaintiffs
192 Lexington Avenue, Suite 802
New York, New York 10024
(212) 425-1020

Easton Thompson Kasperek Shiffrin LLP
Donald Thompson
Co-counsel for Plaintiffs
16 West Main Street, Suite 243
Rochester, New York 14614
Ph: (585) 423-8290